## 10188.   WALLER *et al.* v. THE STATE.

1. When the judge gives to the jury a charge as requested; in writing, it is not erroneous for him to add comments that are pertinent and correct.  Under rulings of the Supreme Court the comments added to the written request in this case were "pertinent and correct."

2. "When the verdict is apparently decidedly against the weight of the evidence, the trial judge has a wide discretion as to granting or re- fusing a new trial; but whenever there is any evidence, however slight, to support a, verdict which has been approved by the trial judge, this court is absolutely without authority to control the judgment of the trial court."

DECIDED JANUARY 9, 1919.

Indictment for larceny of hog; from Chatham superior court— Judge Meldrim.  October 7, 1918.

*Don H. Clark*, for plaintiff in error.

· *Walter ·C. Hartridge, solicitor-general*, contra.

BLOODWORTH, J.  Philip Waller, Lee Waller and William Ennis were convicted under an indictment for hog stealing.  Their motion for a new trial was overruled, and they excepted.  The evidence for the State showed that two hogs, the description of which "tallied" with those alleged in the indictment to have been stolen, were in the Ogeechee river swamp, and were shot and killed on the morning of November 23, 1917, one by William Ennis and one by Lee Waller.  Philip Waller was with the two at the time they did the shooting.  The ears of the hogs were cut off by one of the three and put in his pocket.  All three of the defendants ran when

they ascertained that they were seen. Late in the afternoon of the same day the three defendants were seen going in the direction of the home of the mother of William Ennis. All were in a wagon in which were two hogs with their ears cut off. A witness for the State testified: "I know these defendants. I saw them on the 23d of November, 1917, late in the afternoon, between sundown and dark, at the home of Mrs. Ennis. I saw the three of them there unloading some hogs, two hogs. I was about 25 or 30 yards away, walking in the road." Another witness testified that he saw where a wagon went into the swamp and turned around. "It looked like there was blood there; like hogs or something had been carried that way and had trailed the blood to the wagon—I mean where the wagon was, I did not see any wagon. I saw some hair, a lump. It was fresh blood I saw and it was hog hair. The road. . . runs pretty much the same way as the Ogeechee river. . . . The color of the hair I saw was red looking." .

1. The only special ground of the motion for a new trial complains of the refusal of the court to give to the jury certain requested instructions as written and without qualifying them. Under numerous rulings of this court we are not called upon to pass upon this ground, because it does not appear that the request was made before the jury retired to "consider of their verdict." See Penal Code (1910), § 1087; *Seaboard Air-Line Ry.* v. *Lyon,* 18 *Ga. App.* 267 (6) (89 S. E. 384); *Shirley* v. *State,* 5 *Ga. App.* 611 (2) (63 S. E. 583). However, the judge gave the requested charge, which was as follows: "The act of killing the hogs, even though you may believe that these defendants did so, does not constitute the offense of larceny. The State must go further and show that the defendants took and carried away, with intent to steal, the hogs in question; and if it has not been so shown, by the evidence, you would not be authorized to find the defendants guilty, but should find them not guilty." But the judge added thereto the following: "The slightest moving by the defendants or any of them from the place where the hogs were would be sufficient to authorize you to find that there had been an asportation of the hogs." What the judge added was a correct statement of the law. "In giving to the jury as law what has been reduced to writing by counsel in a request to charge, it is not error for the court to add oral comments, where no request is made to give the whole charge

in writing, and where the comments added are pertinent and correct." *Moughon* v. *State,* 57 *Ga.* 102 (10). As the comments added were "pertinent and correct," the court did not err in thus supplementing the written request to charge. They were "pertinent and correct," for there was evidence that the defendants not only shot the hogs and cut off their ears, but that hogs fitting the description of those stolen were hauled by them late in the afternoon following the morning on which the hogs were alleged to have been shot. This evidence, if true, made out a complete case against the defendants, and the jury had the right to believe it. But without this evidence as to the hauling of the hogs and the carrying of them to the home of the mother of Ennis, the evidence as to the shooting and killing of the hogs and the cutting off of their ears, and the running away of the defendants when discovered, under the rulings of our Supreme Court, was sufficient to authorize the judge to make the addition to the charge, of which complaint is made. The first headnote in *Cross* v. *State,* 64 *Ga.* 443, is as follows: "Evidence to the effect that a hog was heard to squeal, that the witness ran to him, that defendant ran off from him, that the hog was dead, being knocked in the head, is enough to show the taking and carrying away with intent to steal. *Lundy* v. *State,* 60 *Ga.* 143; *Williams* v. *State,* Ib. 367 [27 Am. R. 412]." See also *Smith* v. *State,* 15 *Ga. App.* 403 (83 S. E. 437); *Johnson* v. *State,* 9 *Ga. App.* 411 (71 S. E. 507). The facts in the instant case, as to the shooting of the hogs, are very much like those in the case of *Tinker* v. *State,* 125 *Ga.* 743 (54 S. E. 662), where a verdict of guilty of an attempt to commit larceny was allowed to stand. If there is a conflict between the decisions in the *Cross* case and the *Tinker* case, the former is the older, and we must follow it.

2. Our Supreme Court has said: "This court has always recognized that the greatest weight and consideration should be paid to the verdicts of juries, and in many cases has held that while the verdict was different from what the judges would have rendered as men, the court would not interfere. So, too, where the evidence was conflicting, it would not disturb the finding, although it might think that the preponderance was in favor of the losing party. In testing the sufficiency of evidence this court can not consider the credibility of witnesses, that being a matter

exclusively for the jury, who note their manner of testifying, and consider the thousand and one things transpiring during a trial, which cannot be photographed or transcribed and transmitted to this court as a part of the record." *Patton* v. *State,* 117 *Ga.* 234 (43 S. E. 534). "When the verdict is apparently decidedly against the weight of the evidence, the trial judge has a wide discretion as to granting or refusing a new trial; but whenever there is any evidence, however slight, to support a verdict which has been approved by the trial judge, this court is absolutely without authority to control the judgment of the trial court." *Toole* v. *Jones,* 19 *Ga. App.* 24 (90 S. E. 732). See *Bradham* v. *State,* 21 *Ga. App.* 510 (94 S. E. 618), and cases cited.

Applying the above rulings to the facts in this case, the judgment overruling the motion for a new trial must be

*Affirmed. Broyles, P. J., and Stephens, J., concur.*