## 25750. CAPITAL AUTOMOBILE COMPANY v. WARD.

DECIDED DECEMBER 3, 1936. REHEARING DENIED DECEMBER 18, 1936.

*W. Neal Baird, McDaniel, Neely & Marshall,* for plaintiff in error.

*Lyman W. Hilliard, Harllee Branch Jr.,* contra.

MacINTYRE, J. Fred L. Ward brought trover against Capital Automobile Company for a certain Oldsmobile automobile. The jury found in favor of Ward, and the defendant's motion for new trial was overruled. The writ of error presents exceptions to that judgment. Briefly summarized, the evidence discloses that sometime during March, 1935, the plaintiff had purchased a Ford automobile from Mrs. Cowan, who at that time was carrying on a garage business, dealing in new and used cars. On or about May 24, 1935, the plaintiff approached Mrs. Cowan with regard to the purchase of an Oldsmobile automobile. They reached an agreement whereby she was to allow the plaintiff $686 for his Ford, to be applied on the purchase-price of the Oldsmobile which was $868. It appears that Mrs. Cowan was not a regular authorized dealer in Oldsmobile automobiles, and did not have the type of car desired by the plaintiff, and that she requested him to advise her in this regard. On the same day he informed Mrs. Cowan that

he had seen the type of Oldsmobile he desired, and she thereupon called the Capital Automobile Company, which was a duly authorized dealer in Oldsmobiles, and asked that it deliver to her this type of car. That afternoon Robbins and Smith, agents of the defendant, delivered to her the car in question, and in payment of the purchase-price she delivered to them two checks, one for $686 and one for $200, and advised them that at that time she did not have sufficient funds in the bank to cover said checks but that on the following Monday she would make a deposit sufficient to cover them (the transaction taking place on Friday afternoon). Thereupon they delivered to her an invoice to the automobile, marked "Paid by two checks." On the same day Mrs. Cowan delivered the automobile to the plaintiff in exchange for his automobile, and the next morning she was given a check to cover the balance of the purchase-price. The checks given by Mrs. Cowan were returned by the bank marked "Insufficient Funds." Thereafter the Capital Automobile Company brought a possessory warrant against Ward, gave bond, and took possession of the automobile. This court, in *Ward* v. *Capital Automobile Co., 53 Ga. App.* 537 (186 S. E. 700), held that the possessory warrant would not lie.

It is true that where an agreement is made to sell personal property for cash, and on delivery of the property a check is given for the purchase-price, *as between vendor and vendee* the title to the property does not pass, unless it be expressly agreed between the parties that the check is taken as payment; and where the check is presented to the bank by the vendor in the usual course of business, and is returned by the bank as worthless, the vendor may recover possession of the property from the vendee. *Winton* v. *Butler,* 53 *Ga. App.* 696 (186 S. E. 773). However, this principle is by its express terms applicable only as between vendor and vendee. "The general rule, applicable to property other than negotiable securities, that the seller can convey no greater right or title than he has, is only predicable of a simple transfer from one person to another where no other element intervenes." 24 R. C. L. 378-9, § 665. "Where an owner has given to another such evidence of the right of selling his goods as, according to the custom of trade or the common understanding of the world, usually accompanies the authority of disposal, or has given the external indicia of the right of disposing of his property, a sale

to an innocent purchaser divests the true owner's title." Code, § 96-207. It has been many times stated, and from practical necessity in the transaction of business should be adhered to, that possession of personal chattels, by virtue of which such person has been given dominion and control over the property *as if it were his own,* carries with it the presumption of ownership and consequent right of disposition of such chattel. Thus it would seem that where under a contract of sale an owner gives to another person unrestricted and unqualified possession of personal property, to deal with and use as his own, a purchaser bona fide, for a valuable consideration, from such person in possession divests such owner of his title; although it may be said that the rights of such bona fide purchaser do not depend upon the title or actual authority of the person with whom he deals directly, but are derived from the acts of the real owner, which preclude him from disputing, as against such bona fide purchaser, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the person making the transfer. 24 R. C. L. 379, § 688. This is merely a special application of the statute or rule embodied in our Code, § 37-113 that "When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss." We take it that no one would dispute the proposition that if A and B should walk into a store and A should agree to purchase a certain article therein for cash, and should give a check therefor, and then immediately and in the presence of the seller and owner should turn and sell the article to B for a valuable consideration, under such circumstances the seller would be estopped to set up his title as against B, although the check, on due presentation to the bank, might prove to be worthless. Then could it be reasonably said that if, instead of standing by and watching the property sold by A to B, the seller allowed A to take the article away under a contract of sale and have control and dominion over it *as if it were his own,* and A later sold the property to B, a different rule would apply? We think not. In *Redd* v. *Muscogee R. Co.,* 48 *Ga.* 102, the Supreme Court said: "Where one bought a negro slave at sheriff's sale, and permitted him to remain with the defendant *to use as his own,* and he was so used for years, persons dealing with the said de-

fendant, with no knowledge of who is the true owner, have a right to consider the slave as the property of the person thus '*using him* as his own.'" This was certainly recognized by our legislature at one time to be the true law; for by acts of 1885 (Ga. L. 1884-5, pp. 45, 52, Code, § 96-110) they expressly made an exception to what we have said, by providing that "cotton, corn, rice, crude turpentine, spirits turpentine, rosin, pitch, tar, or other product sold by planters and commission merchants, on cash sale, shall not be considered as the property of the buyer until fully paid for, *although it may have been delivered to the buyer.*" Thus it has been held that "Under the Civil Code [1910], §§ 4126, 4314 [1933, §§ 96-110, 20-1004], where a planter selling cotton on cash sale receives a check for the purchase-price, the title to the cotton, in the absence of an agreement to the contrary, does not pass until payment of the check; and where the check is dishonored he may in trover recover the property from one who, without knowledge of the title reserved by the statute, has bought the cotton from the original purchaser." *Anchor Duck Mills* v. *Harp,* 40 *Ga. App.* 563 (150 S. E. 572). However, Judge Jenkins in the opinion clearly pointed out that the statute makes an exception to the general rule, as to certain commodities, stating: "It is true that there is a *general* principle of law to the effect that if one 'has given the external indicia of the right of disposing of his property, a sale to an innocent purchaser divests the true owner's title' (Civil Code, § 4119 [96-207]), which is but an application of another and broader general principle, to the effect that 'when one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss' (Civil Code, § 4537 [§ 37-113]), still the provisions of § 4126 of the Civil Code must be taken to establish *a special rule* with reference to sales of cotton or other products by planters or commission merchants on cash sale, such as will protect the seller in his title even as against one purchasing from his vendor without any sort of knowledge of the title thus reserved in the seller by operation of the statute." See cases of this same character.: *Flannery* v. *Hawley,* 117 *Ga.* 483 (43 S. E. 765); *Savannah Cotton-Press Asso.* v. *MacIntyre,* 92 *Ga.* 166 (17 S. E. 1023). It is quite true, as earnestly asserted by counsel for the plaintiff in error, that in the sale of personal property the

doctrine caveat emptor applies (*Daniel* v. *Hollingshead,* 16 *Ga.* 190; *Wells* v. *Walker,* 29 *Ga.* 450, Code, § 96-111); and that "while possession of personal property is presumptive evidence of ownership, such presumption is not conclusive, and any person dealing with the possessor as the owner will not obtain title to the property as against the true owner, *unless he has done something to mislead or deceive such person.*" (*Harris Loan Co.* v. *Elliott &c. Co.,* 110 *Ga.* 302, 34 S. E. 1003; *Gilbert* v. *Copeland,* 22 *Ga. App.* 753, 97 S. E. 251; *Darby* v. *Parrish,* 42 *Ga. App.* 492, 156 S. E. 462), yet where the true owner has given to another "the external indicia of the right of disposing of his property," by putting him in possession of it under a contract of sale, to be used as if it were his own, and such person does actually exercise dominion and control over it as if it were his own, then he has "done something to mislead or deceive" a person who, on the faith of such possession, buys the property for a valuable consideration; and the principle of estoppel protects such purchaser. Thus *Harris Loan Co.* v. *Elliott &c. Co.,* supra, is distinguished, because the goods were entrusted to another to be used as a sample in making sales of like articles, which the court said was not an act calculated to mislead others in regard to the ownership of the property. Judge Jenkins in *Morris* v. *Walker Co.,* 29 *Ga. App.* 476 (116 S. E. 201), most ably stated the principle on which this case is to be decided. He said: "In a sale of goods, where nothing is said between the parties as to the time of payment of the price, the transaction is understood to be a cash sale. . . But where, under the express or implied terms of a sale, the purchase-price is to be paid upon delivery of the goods, and the vendor, without collecting the purchase-price, nevertheless proceeds to make delivery in pursuance of his contract, and the vendee, after such delivery, proceeds to re-sell the goods to a bona fide purchaser for value, the rights of such innocent third person are governed by the provisions of sections 3318 and 3319 of the Civil Code [1933, §§ 67-1401, 67-1403], relative to conditional sales, and the vendor can not recover the goods from such innocent purchaser, where the terms of sale had not been reduced to writing and recorded as required by the statute." Judge Jenkins also set out the exceptions to this rule, and on a close examination it will be found that this case does not come within any of them. If the defendant had wished to pro-

tect its title to the car as against innocent third parties, until the checks given by Mrs. Cowan had been paid, it should have reduced its contract to writing specifically retaining title to the automobile, as provided by statute, or it should have retained possession of the car until the checks were paid. Without question, under such contract of sale, it placed Mrs. Cowan, whom it knew to be a dealer in new and used cars, in possession of the car in question, to be used as her own, not only delivering to her the unrestricted and unqualified possession of the automobile, but also delivering to her an invoice to the same marked, "Paid by two checks," and purchasing therefor a tag, the application for which stated Mrs. Cowan to be the owner of the car. It was not shown that the plaintiff, Ward, purchased the car from Mrs. Cowan with any notice of an agreement or intention between her and the defendant that the title to the car was to remain in the defendant until the checks were paid. The contention of plaintiff in error, that the invoice delivered to the plaintiff by Mrs. Cowan, marked "Paid by two checks," was notice that the defendant retained title to the car until the checks were paid, is not meritorious. On the contrary, such indorsement would indicate that the defendant accepted the checks as payment and delivered to her the full possession of the car to be put to any use that she might see fit. Nor does the evidence disclose that in purchasing the car from the defendant Mrs. Cowan acted as agent for plaintiff. If there be anything, contrary to what we have said herein, decided in *Chafin* v. *Cox*, 39 *Ga. App.* 301 (147 S. E. 154), *Ferguson* v. *Hogan*, 27 *Ga. App.* 286 (108 S. E. 70), *Bowen* v. *DeLoach*, 13 *Ga. App.* 458 (79 S. E. 371), *Bank of Waynesboro* v. *Davis*, 35 *Ga. App.* 201 (132 S. E. 246), those decisions must of course yield to former decisions of this court and the Supreme Court, and to the provisions of our Code. The verdict in favor of the plaintiff for the possession of the car was amply authorized, and the judge did not err in overruling the motion for new trial.

*Judgment affirmed. Guerry, J., concurs. Broyles, C. J., dissents.*

### ON MOTION FOR REHEARING.

MacIntyre, J. The ruling of this court in its original opinion was that where an owner of personal property agrees to sell it to another person for cash, and, on delivery of the property to the

purchaser, accepts checks in payment, and thereafter such purchaser, having been placed in possession of the property *by virtue of such agreement to sell,* sells it for a valuable consideration to a third person who has no notice of the true owner's title, the owner is thereafter estopped to set up his title as against such third person, although the checks so given, on due presentation to the drawee bank, are returned as worthless. This principle is not based purely on the fact of possession alone of the property in the seller, but only where the possession of the goods has been delivered to the seller in pursuance of a contract of sale. As was pointed out by Judge Jenkins in *Morris* v. *Walker Co., 29 Ga. App.* 476 (supra), this principle is not applicable "where the subsequent sale has been made to one not a bona fide purchaser (*Ferguson* v. *Hogan, 27 Ga. App.* 286 [supra]) ; nor is the rule applicable in cases involving contracts of bailment, agency, or partnership (*Clarke* v. *McNatt, 132 Ga.* 610, 616-619, 64 S. E. 795, 26 L. R. A. (N. S.) 585) ; nor in contracts of consignment amounting merely to a bailment (*National Bank* v. *Goodyear, 90 Ga.* 711 (3), 725, 16 S. E. 962) ; nor in cases of sales by thieves or trespassers unlawfully acquiring possession of the goods (*Milltown Lumber Co.* v. *Carter, 5 Ga. App.* 344 (2, *d*), 63 S. E. 270; 24 R. C. L. 375) ; nor does it have application in sales of cotton and other products by 'planters and commission merchants, on cash sale,' under section 4126 of the Civil Code (1910) (*Flannery* v. *Harley,* 117 *Ga.* 483, 43 S. E. 765; *Ocean Steamship Co.* v. *Southern Naval Stores Co.,* 145 *Ga.* 798 (2), 89 S. E. 838) ; in all of which cases the title of the vendor may be asserted against a bona fide purchaser, regardless of the conditional-sale statutes." As we attempted to point out in the original opinion, we were familiar with the principle that generally a seller can convey no greater title than he has himself, as declared in the Code, § 96-111. However, as we there stated, this principle is "only predicable of a simple transfer from one person to another where no other element intervenes," and where the true owner delivers possession of the property involved to another under an agreement to sell, and such person, in possession of the property by virtue of the agreement to sell, sells the property to a bona fide purchaser, under the Code, §§ 96-207, 37-113, the element of estoppel intervenes and prevents such true owner from setting up his title as against such

bona fide purchaser. We did not overlook the case of *Harris Loan Co.* v. *Elliott &c. Co.*, 110 *Ga.* 302 (supra), as we took occasion to cite this case in support of our position. There the delivery of the property was not made to the seller under an agreement to sell, but was delivered to him "as a sample in making sales of like articles," which the Supreme Court said was an act not "calculated to mislead others in regard to the ownership of the property." Neither did we overlook the principle that checks and drafts are not payment until themselves paid. In a case of this character, as between the original parties this principle is applicable, but is not in conflict with the holding we have made as regards a bona fide purchaser of the property.

Counsel further contends that because the invoice to the automobile from the Capital Automobile Company to Mrs. Cowan was marked "Paid by two checks," which invoice was delivered to Ward on his purchase of the car, he was thereby put on notice of the law that checks are not payment until themselves paid, and that it was his duty to ascertain whether the checks had been paid before he purchased the car. On the contrary, we have been inclined to hold that the entry of the Capital Automobile Company on the invoice of the words "Paid by two checks" was conclusive evidence, where third parties were involved, that the checks were accepted *as payment*. However, aside from this, Ward, the purchaser, had a right to rely on the fact that if the Capital Automobile Company had intended to retain title to the car for any length of time and had not intended for Mrs. Cowan to treat the car as her own, it would have either (1) executed a retention-of-title contract as provided by law, or (2) would not have delivered possession of the car under the contract of sale until the purchase-price was paid. We remain of the opinion that our original holding is correct.

*Rehearing denied. Guerry, J., concurs. Broyles, C. J., dissents.*